UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:15-CR-56-TAV-HBG ) |
| MAYRA EDITH BLAIR, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This criminal action is before the Court on the defendant's Motion for Review of Detention Order [Doc. 45]. The defendant has been charged with conspiracy to submit false claims, in the form of false and fraudulent income tax returns; conspiracy to commit mail fraud; conspiracy to commit wire fraud; and conspiracy to commit money laundering [Doc. 4]. Viewing the defendant as a serious flight risk and a danger to the community, the government moved the Court to detain her pending trial [Doc. 20]. These issues were discussed during a four-hour hearing on March 20, 2015, before Magistrate Judge C. Clifford Shirley, Jr. [Doc. 21]. After hearing from witnesses, examining exhibits, and considering the attorney's arguments, the magistrate judge determined that detention is warranted in this case [*Id.*].

Although the magistrate judge did not find that the defendant poses a danger to any other person or the community, he found by a preponderance of the evidence that "[t]here is a serious risk that the defendant will not appear" as required [Doc. 24 p. 2–4].

After weighing the factors for and against detention, he concluded that "[t]he only ingredient missing from Defendant's flight is the opportunity to do so" and "there are no conditions that the Court could place on the Defendant to ameliorate the risk of flight" [*Id.* at 3–4]. The defendant asked for a rehearing, which the magistrate judge denied [Doc. 43], and then asked this Court to review the detention order [Doc. 45]. The government has responded in opposition [Doc. 50], and the matter is now ripe for review.

**I.      Standard of Review**

Title 18, United States Code, Section 3145(b) provides that "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." A district court reviews *de novo* a magistrate judge's order of pretrial detention. *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)); *United States v. Stanford*, 341 F. App'x 979, 981 (5th Cir. 2009) (stating that when the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release); *United States v. Garcia*, 445 F. App'x 105, 108 (10th Cir. 2011) (same); *see also United States v. Watkins*, Criminal Action No. 13-02-KSF, 2013 WL 614252, at *3 (E.D. Ky. Feb. 19, 2013) (reviewing detention order *de novo*, stating that 18 U.S.C. § 3145 does not set out the standard of review, that the Sixth Circuit has not spoken directly on the issue, and that most district courts in the Sixth Circuit have applied *de*

*novo* review). The Court may receive additional evidence or simply rely upon the record of the earlier detention hearing. *E.g.*, *United States v. Martinez*, No. 1:12-cr-210, 2012 WL 4815018, at *1 (W.D. Mich. Oct. 10, 2012).

Under 18 U.S.C. § 3142(e)(1), if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." The government must prove risk of flight by a preponderance of the evidence and must prove dangerousness to any other person or the community by clear and convincing evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). As the Sixth Circuit has stated, "the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010). Because the magistrate judge rested his detention order on risk of flight and the government no longer requests detention based on dangerousness, risk of flight is the only issue discussed herein.[1]

In determining whether the government has met its burden of persuasion, the Court must take into account the available information concerning, among other factors, the nature and circumstances of the offenses charged; the weight of the evidence against the person; and the person's history and characteristics, including the person's character,

---

[1] The magistrate judge found, and the parties do not dispute, that the § 3142(e) presumption in favor of detention does not apply in this case. And having reviewed the record, the Court notes its agreement with the magistrate judge's finding that the government has not shown by clear and convincing evidence that the defendant presents a danger.

3

family ties, employment, financial resources, length of residence in the community, community ties, past conduct, and criminal history. *Id.*; 18 U.S.C. § 3142(g). The weight of the evidence factor goes to the weight of the evidence of flight risk, not the weight of the evidence of the defendant's guilt. *See Stone*, 608 F.3d at 948 (noting that "the weight of evidence against the person 'deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community'" (quoting *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985))); *United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("[T]his factor goes to how convincing the government's arguments of dangerousness and risk of flight are."). The Court will address the factors in turn.

## II. The Nature and Circumstances of the Offenses Charged

The defendant has been charged with conspiracy to submit false claims, in the form of false and fraudulent income tax returns; conspiracy to commit mail fraud; conspiracy to commit wire fraud; and conspiracy to commit money laundering [Doc. 4]. The charges against the defendant involve the utilization of false identifications, including fake Guatemalan, Honduran, and Mexican driver licenses and birth certificates [Doc. 24 p. 3; Doc. 39 p. 8].

According to the indictment, people who are not United States citizens or legal permanent residents may be entitled to certain tax refunds [Doc. 3 ¶¶ 12–13]. To fraudulently obtain such refunds, the defendant's coconspirators allegedly used false

4

identification documents to obtain taxpayer identification numbers from the Internal Revenue Service [*Id.* ¶ 15]. The taxpayer identification numbers, false documents, and names were then provided to the defendant, and she and her employees allegedly prepared the fraudulent returns [*Id.* ¶ 16; Doc. 39 p. 8].

At the detention hearing, an investigator testified that the defendant knew the identification documents were false and that the coconspirators who prepared the false documents are not in custody [Doc. 39 p. 8–9]. The government also stated that the defendant faces a potential sentence of eleven to fourteen years' imprisonment [*Id.* at 131]. Having reviewed the indictment and hearing transcript, including evidence that the defendant has contemplated flight to Mexico, as discussed below, the Court finds that the nature and circumstances of the charged offenses support pretrial detention in this case.

**III. The Defendant's Personal History and Characteristics**

The defendant relies on her personal history and characteristics, particularly her community ties [Doc. 45 p. 5–6]. The defendant has resided in the United States since she entered the country on a visa in 1996, and she became a naturalized citizen in 2012 [*Id.* at 5]. She still has family and contacts in Mexico, however [Doc. 39 p. 48]. Her mother, for example, owns a home in Monterrey, Mexico [Doc. 45 p. 6]. The defendant also is married to and has been living for years with a Mexican national who is not legally entitled to live in the United States [*Id.* at 5, 5 n.1].

According to the defendant, she "has resided here for quite some time," has been consistently employed for at least the past ten years, and has no criminal history or

5

history of drug or alcohol abuse [*Id.* at 2, 5].  She owns a home and business in Knoxville, employs multiple individuals, and cares for her two minor children, over whom she has full custody and who allegedly have active academic and social lives [*Id.* at 2, 5–6].  Her husband also works locally and helps care for the children [*Id.* at 5].

As for past conduct, the defendant highlights that she did not flee after search warrants were executed on her businesses in December 2014 [*Id.* at 6–7].  Despite becoming aware that she may face legal trouble, she remained in Knoxville and sought the advice of a lawyer and an accountant rather than flee to Mexico [*Id.*].

The government responds by emphasizing other aspects of the defendant's past conduct, in particular, two letters in the defendant's handwriting to her employee Diane Ortiz [Doc. 50 p. 4–8].  Ms. Ortiz ran the Alcoa, Tennessee, location of the defendant's business [Doc. 39 p. 9, 12–13].  She pled guilty to conspiracy to submit false claims in connection with the defendant's business and is currently in custody [Doc. 50 p. 4 n.1].  The magistrate judge found that the defendant's letters "allud[e] to promises made by the Defendant to assist Ms. Ortiz in an attempt to flee the United States upon her release on bond and to fulfill Defendant's promise to travel to Mexico and close her business in East Tennessee" [Doc. 24 p. 3].  Below is relevant text from the letters, which were translated from Spanish to English during the detention hearing.

The first letter, dated January 23, 2015, states in relevant part, "You know I am going to Tepito, Mexico once this passes to keep my first promise -- one of my promises.

6

I'm also going to close Alcoa to keep my second one" [Doc. 39 p. 156–57]. The second letter, dated January 28, 2015, states in relevant part:

> I made my promises, and I'm going to fulfill them. And you will see how this is going to be fixed . . . . I do not know how things are going for me still, but believe me that while I am still outside I am going to help you. I hope they give you bond so that I can sign it and get you out. And if I have to go to Mexico, up until there we have a plan. But you are not alone. My mother is waiting in MTY.[2] If we need to and I would sign 10K if I have to for a bond. I already have an attorney that after court is going to help you.

[*Id.* at 141].[3] The defendant argues that she was referring to an immigration bond, which she paid for a friend some years ago, and that her letter merely meant that Ms. Ortiz would have somewhere to stay if she were deported to Mexico [Doc. 45 p. 6].

The Court cannot agree with the defendant's interpretation. The plain language of the letters indicates contemplation of flight from authorities, and the defendant has not presented sufficient information to warrant a contrary finding. At the time she wrote the letters, the defendant was aware that she "may face legal troubles" and that Ms. Ortiz was facing criminal charges, not simply a deportation proceeding [*See id.* at 6–7]. The Court agrees with the magistrate judge's findings that these letters appear to be "a plan to get somebody out on bond and fly them to Mexico, and if necessary, [the defendant] will go with them. It further indicates it's a promise she has made to go to Mexico and to close

---

[2] It appears undisputed that this abbreviation stands for Monterrey, Mexico [*See* Doc. 39 p. 144]. MTY is the airport code for Monterrey, and the defendant has confirmed that her mother owns a home there [Doc. 45 p. 6].

[3] Part of this letter was also translated at the hearing as, "I don't know what's going on with me yet, but believe me while I'm outside I'm going to help you. I hope you get a bond so I can sign and get you out if I have to and go to Mexico for you. Over there for you I will go, and we will have a plan. But you are not alone. My mother awaits for you in MTY, and if we have to, I will sign 10K. It will be for if I have to pay a bond" [Doc. 39 p. 143–45].

7

down her business" [Doc. 39 p. 162–63; *see also id.* at 163 ("It sounds like she's already thought about [flight], planned it, and would be likely to do it if I let her.")].

Faced with these letters, the defendant proposes conditions of release that "should assure the Court that she will appear as required" [Doc. 45 p. 2]. The defendant and her mother, who is a permanent resident in Texas, both own their own homes [*Id.*]. The defendant represents that she and her mother are willing to pledge their homes and to submit to electronic monitoring and travel restrictions [*Id.*]. As explained below, the Court does not find that these proposed conditions of release, or any other combination of conditions, will reasonably assure the appearance of the defendant as required.

## IV. The Weight of the Evidence

The defendant claims that her close ties to the community provide a strong reason not to flee and that there is no evidence or suggestion, apart from the letters, that she would leave her family and business [*Id.* at 6]. The Court agrees that aspects of the defendant's history and characteristics weigh in favor of release. As the magistrate judge noted, the defendant "has strong community ties, is employed, has family ties in East Tennessee, and her criminal record is minimal" [Doc. 24 p. 3].

Notwithstanding the defendant's arguments, the Court finds the weight of the evidence weighs in favor of a flight-risk finding. The defendant's own words in her letters are likely sufficient, standing alone, to support the finding. As the magistrate judge reasoned, the defendant "is a risk of flight by virtue of her own letters of intent and planning" [*Id.* at 4].

8

But the letters are not the only evidence indicating a risk of flight. The defendant has significant contacts in a foreign country and significant financial resources. Her mother owns a home in Mexico, her husband is a Mexican national living in the United States illegally, and a check made out to the defendant's business for over $27,000 was presented at the hearing. Regardless of whether the check represents legitimate earnings or criminal proceeds, the money could be used to assist the defendant escape prosecution.

Having found that the defendant has contemplated flight and possesses significant ability to flee, and considering the nature and circumstances of the charged offenses, the Court is unable to conclude that any condition or combination of conditions will reasonably assure her appearance as required. *See United States v. Abboud*, 42 F. App'x 784, 784 (6th Cir. 2002) (affirming district court's detention order, reasoning that "[t]he motive for flight is strong, and the evidence suggests that travel was contemplated"). And review of the case law relied upon by the defendant does not disturb the Court's analysis. In *Zapien*, the court noted that living in the country illegally, having fraudulent identification documents, and possessing a substantial amount of cash "are all obvious grounds for concern" but ultimately found, based on Zapien's personal history and characteristics, that the following conditions would reasonably assure his appearance: posting a $100,000 bond, agreeing that he and his wife would forfeit automatically any interest in their residence, and living in home confinement and with electronic monitoring at all times. *United States v. Zapien*, No. 3:14-cr-00037-1, 2014 WL 1028435, at *4 (M.D. Tenn. Mar. 17, 2014). Lacking evidence comparable to the letters written by the

9

defendant herein, and given the fact-intensive nature of the detention inquiry, *Zapien* does not persuade the Court to find in favor of release.[4]

## V. Conclusion

Upon *de novo* review of the parties' arguments, the § 3142(g) factors and potential conditions of release, and the record in this case, the Court finds that pretrial detention is warranted. The Court acknowledges that aspects of the defendant's personal history and characteristics weigh in favor of release, and that she would not pose danger to any person or the community if released. However, the Court finds that the nature and circumstances of the charged offenses in combination with other evidence, particularly the two letters written by the defendant, warrant pretrial detention.

In reaching this determination, the Court has considered, among other options, the possibility of home confinement, electronic monitoring, travel restrictions, and requiring the defendant to post a bond. Viewing all of the factors together, the Court concludes that no conditions of release, including electronic monitoring of the defendant and her mother and an agreement to forfeit their homes, will reasonably assure the defendant's

---

[4] The defendant also asks the Court to consider the collateral consequences of her pretrial detention, particularly its effects on her children and business, given the "far extended" pretrial detention period in this case [Doc. 45 p. 8]. This case has been deemed complex for speedy trial purposes, and the trial date has been moved from May 26, 2015, to February 8, 2016 [Doc. 56]. As an initial matter, the Court has considered the defendant's children and business in its flight-risk analysis and notes that, to the extent the effects of detention do not affect her risk of flight, those effects do not appear to be relevant to the detention inquiry. *See* 18 U.S.C. § 3142(g). The Court understands the defendant's concerns, however, and notes the May 15, 2015 order in this case, in which the magistrate judge stated, "the Court will permit Defendant Blair to file a motion to be severed from the trial of her codefendants by the new motion deadline should she choose to do so" [Doc. 56 p. 9].

appearance as required. Accordingly, the defendant's Motion for Review of Detention Order [Doc. 45] is hereby **DENIED**. The defendant shall remain detained pending trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE